UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SCOTTSDALE INSURANCE COMPANY,**

        **Plaintiff,**

v.                                       Case No:  6:19-cv-1963-Orl-37-DCI

**HARVEY GOODS and ABG13, LLC,**

        **Defendants.**

**REPORT AND RECOMMENDATION**

This cause comes before the Court *sua sponte* upon consideration of Scottsdale Insurance Company's (Plaintiff) response to the undersigned's Order to Show Cause. Doc. 29. Plaintiff's motion for default judgment raised concerns regarding the existence of subject matter jurisdiction in this case. Accordingly, the undersigned denied the motion without prejudice and directed Plaintiff to show cause why this case should not be dismissed. Doc. 28. Plaintiff has filed a Response to the Order (Response) and an affidavit in support thereof. Docs. 29, 30. For the reasons stated herein, the undersigned recommends dismissal.

**I.      Background**

On October 23, 2019, Plaintiff filed an Amended Complaint wherein the insurance company seeks a declaration that it has no duty to defend or indemnify ABG13, LLC (ABG13) in a pending state action brought by Harvey Goods (Goods) against ABG13, Plaintiff's insured. Doc. 7. In that action, *Harvey Goods v. ABG13*, case no. 2018-CA-005176-O, Goods seeks damages against ABG13 arising from his alleged exposure to mold at a rental property he claims was leased from ABG13. *Id*. at 7.  Goods claims that he was a professional singer and lost the productive use

of his voice because of the effects of the mold and lost his livelihood. *Id*. at 8. Plaintiff states that it issued insurance policies to ABG13 providing general liability coverage from February 28, 2016 to February 28, 2017 (policy number CPS2328184) and from February 28, 2017 to February 28, 2018 (policy number CPS2610226). Doc. 7 at 2. Plaintiff claims to be providing a defense to ABG13 in the underlying lawsuit "subject to a reservation of rights under the policies to deny coverage for defense and indemnity based on certain policy provisions." *Id*. at 2.

Plaintiff has filed this action in federal court pursuant to 28 U.S.C. § 2201 seeking a declaration that it does not have a duty under the policies to defend or indemnify ABG13 for the claim and damages in the underlying lawsuit. *Id*. at 7. Plaintiff argues that the policies have a fungi and bacteria exclusion that applies to bar coverage. *Id*. at 9. Plaintiff seeks a declaration that it has the right to withdraw its defense of ABG13 in the underlying lawsuit. *Id*. at 12.

Defendant ABG13 has not filed a response to the Amended Complaint and a Clerk's Entry of Default was entered upon Plaintiff's request. Docs. 15, 16. Plaintiff subsequently filed its request for default judgment against ABG13. By Order dated June 8, 2020, the undersigned denied the motion without prejudice. Doc. 28. Specifically, the undersigned found that Plaintiff did not meet its evidentiary burden concerning the existence of diversity jurisdiction, which is relevant to whether default judgment is appropriate. *Id*. at 5. Because the amount in controversy necessary to remain in federal court was in question, the undersigned gave Plaintiff an opportunity to show cause as to why this case should not be dismissed. *Id*. at 9. Plaintiff responded and maintains that subject matter jurisdiction exists, and this case should proceed. Doc. 29.

**II. Discussion**

Plaintiff alleges that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Doc. 29 at 1. To invoke a federal court's diversity jurisdiction, a plaintiff must allege that

the parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "When a plaintiff seeks. . . declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (quoting *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)). "[W]here jurisdiction is based on a claim for indeterminate damages, the...'legal certainty test' gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Id.* "A conclusory allegation. . . that the jurisdictional amount is satisfied, without setting forth the underlying facts supporting such an assertion, is insufficient to meet the [plaintiff's] burden." *Bradley v. Kelly Servs., Inc.*, 224 F. App'x 893, 895 (11th Cir. 2007) (alterations in original).

When an insurer seeks a declaration that it has "no duty to defend or indemnify its insured in an underlying lawsuit," the amount in controversy is determined by examining the following factors: "(1) the coverage limits under the insurance policy; (2) the amount of damages sought in the underlying lawsuit; and (3) the pecuniary value of the obligation to defend the underlying lawsuit." *Southern-Owners Ins. Co. v. Maronda Homes, Inc. of Florida*, 2019 WL 2929715, at *2 (M.D. Fla. July 8, 2019) (quoting *Clarendon Am. Ins. Co. v. Miami River Club, Inc.*, 417 F. Supp. 2d 1309, 1316 (S.D. Fla. 2006) (citations omitted)).

As discussed in the Order to Show Cause, it seems that the policy limit tends to support Plaintiff's argument that the amount in controversy requirement is satisfied. *See* Doc. 28. In the Response, Plaintiff relies on the policies attached to the Amended Complaint which provide "coverage A – Bodily Injury and Property Damage Liability of $1,000,000 any one occurrence,

subject the General Aggregate limit of liability, which is $2,000,000." Doc. 29 at 2, citing Doc. 7, Exs. A, B.  Clearly, these amounts exceed the jurisdictional threshold.

Even so, "[c]ourts in the Eleventh Circuit have stated that 'policy limits alone are insufficient to determine the amount in controversy for insurance coverage purposes.'" *Southern-Owners Ins. Co.*, 2019 WL 2929715 at *2 (citing *Direct Gen. Ins. Co. v. Gay*, 2010 WL 4736906, at *3 (N.D. Fla. Nov. 15, 2010) (citing *Martins v. Empire Indem. Ins. Co.*, No. 2008 WL 783762, at *2 (S.D. Fla. Mar. 21, 2008) (holding that the policy limits of an insurance policy are not alone sufficient evidence to establish the amount in controversy));

"While a low policy limit may be relevant in showing that the monetary value of the action to the insurer does not reach the jurisdictional threshold, . . . a high policy limit does not establish a large amount in controversy for the simple reason that the underlying plaintiff's claim may be for far less than the policy limit." *Southern-Owners*, 2019 WL 2929715, at *2, (citing Emp'rs Mut. Cas. Co. v. Parker Towing Co., 2007 WL 4577705, at *2 (S.D. Ala. Dec. 27, 2007) (citing Hartford Ins. Group v. Lou-Con, Inc., 293 F.3d 908, 911 (5th Cir. 2002); *see also*, *Amerisure Ins. Co. v. Island Crowne Dev'rs, L.C*., 2010 WL 11626694, at *2 (M.D. Fla. Apr. 28, 2010) ("a showing that the policy amount exceeds $75,000 does not in and of itself establish that the amount in controversy requirement has been met because the value of the underlying claim may be for less than the policy limits.").

So, regardless of the policy limit, the Court must examine the remaining factors.  With respect to the amount of damages, Plaintiff draws the Court's attention to settlement demands made in the underlying insurance action.  Plaintiff states that Goods alleged in his state pleading that his damages exceed $15,000 and as a result of ABG13's negligence he has suffered an extreme illness resulting in the loss of income and the enjoyment of life, along with physical injuries,

- 4 -

medical expenses and pain and suffering.  Doc. 29 at 3.  Plaintiff states that Goods' medical expenses only total $1,945.00 to date, but "given his claimed intangible damages," he demanded payment in excess of $75,000 to resolve his claim against ABG13.  *Id*. at 2.  It appears that Plaintiff argues that the severity of Goods' injury reflected in his demands for payment demonstrate that the minimum federal jurisdictional amount for diversity exists.  *See* 2-3.

While it is true that demands are relevant to this analysis, Goods' demands in excess of $75,000 do not automatically establish the amount in controversy.  *Katis v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 217788, at *2 (Dec. 31, 2018) (citing *Lamb v. State Farm Fire Mut. Auto. Ins. Co.*, 2010 WL 6790539, at *2 (M.D. Fla. Nov. 5, 2010) (stating that demand letters and settlement offers "do not automatically establish the amount in controversy for purpose of diversity jurisdiction").

Instead, courts evaluate whether demand letters "reflect puffing and posturing" or "whether they provide 'specific information to support the plaintiff's claim for damages.'"  *Lamb*, 2010 WL 6790539, at *2 (quoting *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009)); see also *Jenkins v. Myers*, 2016 WL 4059249, at *4 (M.D. Fla. July 27, 2016) (stating a demand letter that appears to be mere puffery or an attempt at posturing, "is insufficient to prove by a preponderance of the evidence that the amount in controversy meets or exceeds $75,000").

As evidence, Plaintiff provides the affidavit of Bartley Vickers who represents ABG13 in the underlying state action.  Doc. 30.  On this issue, Bartley Vickers avers only that: "In relation to the underlying lawsuit, Harvey Goods made prior demands for payment in excess of $75,000 to resolve his claim against ABG13, LLC."  *Id*.  This statement provides absolutely no information other than the fact that demands were made. The affidavit is submitted on behalf of an attorney

who is not involved in the federal case and it fails to shed light on the form, timing, or nature of Goods' demands for payment to ABG13. The Court cannot rely upon it to adequately evaluate whether the demands were "mere puffery" or ascertain anything else about the claim. As such, the demands for payment to resolve the dispute for the alleged damages do not carry the day.

It is also Plaintiff's position that a final default judgment entered in Goods' state case should be considered when examining the amount of damages sought in the underlying insurance action. Plaintiff claims that the full extent of Goods' alleged damages has not been established in the underlying lawsuit, but the state court previously entered a $5,000,000 final default judgment in Goods' favor. Doc. 29 at 2. Plaintiff contends that the final judgment demonstrates that "the amount of damages sought by Goods clearly exceeds $75,000." *Id.*

The undersigned recommends that the Court reject Plaintiff's invitation to take into consideration the $5,000,000 default judgment for the reasons stated in the June 8, 2020 Order to Show Cause. Doc. 28.[1] Plaintiff offers nothing new in the Response to justify utilizing that figure to find that subject matter jurisdiction exists. *See* Doc. 29.

In sum, the undersigned recommends that Goods' demands and alleged injuries coupled with the final default judgment do not adequately evince the amount of damages in relation to the second factor.

---

[1] As stated in the Order to Show Cause, Plaintiff provides the Court with an exhibit that reflects that amount in the default. Doc. 28, citing 27-1. The final judgment, however, is against Scott Parker and *not* ABG13, Plaintiff's insured. *Id.* In the motion for default judgment, Plaintiff failed to discuss the connection between Mr. Parker and ABG13. *See* Doc. 27. The undersigned recognized that Plaintiff pleads that Scott Parker is the only member of ABG13 and Plaintiff confirms that fact in the Response, but there was no discussion in the original motion or in the Response to clarify how a judgment against him proves that the minimum amount in controversy exists with respect to ABG13. Docs. 27, 29. The undersigned finds this to be especially true since that judgment has been admittedly vacated "based on the agreement of the parties." *See* Doc. 27 at 4, Doc. 29 at 2.

With respect to the third factor, Plaintiff did not sufficiently address the pecuniary value of the obligation to defend the underlying lawsuit in its original request for default judgment, and the undersigned recommends that the Response is still lacking in this regard. *See* Docs. 27, 28.[2] In the Response, Plaintiff contends that it is not unreasonable to estimate that the value of the underlying defense is at least $52,252.56. Doc. 29 at 3. Plaintiff arrives at this figure by combining its incurred and foreseeable defense costs. *Id.* Plaintiff argues that $52,252.56 along with the $1,000,000 policy limits and damages between $15,000 and $5,000,000 demonstrate that the amount in controversy exceeds $75,000. Doc. 29 at 3-4.

Indeed, there are cases that support a finding that anticipated costs are appropriately considered in evaluating the defense of the underlying case. *See e.g.*, *Integon Nat'l Co. v. Ben's Reliable Roofing, Inc.*, 2010 WL 11506048, at *3 (S.D. Fla. Jan. 26, 2010) ("Given the gravity of the allegations in the second amended complaint, it is highly probable that Integon will have to expend more than $25,000 defending the action, meaning the value of this declaratory judgment action is worth more than $75,000 to Integon"); *Dairyland Ins. Co. v. Chadwick*, 2008 WL 912428, at *3 (M.D. Fla. Apr. 1, 2008) ("in the court's opinion, Dairyland's costs of defense for Chadwick and Kennedy could foreseeably exceed $35,000 in the underlying lawsuit.").

There is also authority, however, that supports the opposite conclusion, that the projected cost of a defense is not enough to meet the amount in controversy threshold in certain circumstances. *See e.g.*, *Southern-Owners*, 2019 WL 2929715, at *4 (rejecting anticipated defense costs where there was no allegation that any underlying litigation was pending and no allegation of a specific amount of defense cost incurred); *GMAC Ins. Co. Online, Inc. v. Shaw*, 2014 WL

---

[2] In the Order to Show Cause, the undersigned found that Plaintiff described the serious nature of the allegations in Goods' state action but did not specifically discuss the cost of defense issue. Doc. 28.

12618188, at *3 ("unsubstantiated predictions of plaintiffs' attorneys' fees are not sufficient to meet the jurisdictional requirement"); *see also Amerisure*, 2010 WL 11626694, at *3 ("To reach a conclusion that these costs would push the amount in controversy above the jurisdictional threshold, especially in light of Island Crowne's general claim of $15,000 or more in damages in the underlying complaint, would require that the Court engage in impermissible speculation; an action that this Court will not take."); *Dairyland Ins. Co. v. Valladares*, 2009 WL 10667165, at *2 (S.D. Fla. Jan. 15, 2009) (amount in controversy not met where plaintiff failed to substantiate assertions of defense costs with affidavits or other extrinsic evidence.).

While there is an ongoing underlying action involving the insured, the undersigned hesitates to accept Plaintiff's assertion that an anticipated $35,000 should be included in the amount in controversy calculation without any evidence. Plaintiff offers that ABG13 has already incurred $17,252.56 in legal fees and costs in the underlying action, and Bartley Vickers' affidavit confirms that amount. Docs. 29, 30. With no additional support as to the anticipated amount, Plaintiff claims that the parties to the underlying lawsuit are engaging in discovery with an anticipated trial date in July 2021 and it is "not unreasonable" to assume that defense fees and costs could exceed $35,000. Doc. 29 at 3.

For whatever reason, the affidavit of Bartley Vickers, the attorney for the insured in the state action, does not mention discovery, the trial date, or the estimated defense fees and costs, and the Court is left with nothing other than Plaintiff's conclusory assertion regarding the stage of that case and the projected trajectory of the litigation offered in the Response. *See* Doc. 30. The undersigned recommends that Plaintiff's say so on the anticipated cost of the defense is insufficient. *See Direct General Insur. Co. v. Gay*, 2010 WL 4736906, at *4 ("established

precedent does not allow for conclusory, self-serving assertions of attorney's fees in order to meet the amount in controversy threshold.").

As such, Plaintiff has not met its burden to establish that the amount in controversy threshold has been met.

### III.   Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that the case be dismissed for lack of subject matter jurisdiction.  *See Guevara v. Republic of Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006) ("If the court finds that it does not have subject matter jurisdiction, 'the court's sole remaining act is to dismiss the case for lack of jurisdiction.'") (quoting *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000)).

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on July 28, 2020.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties